Exhibit C

Attorney Docket: INTRP003C2

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: Wynne et al. | Confirmation No.: 6763 |
| Application No.: 17/301,204 | Art Unit:  1742 |
| Filing Date: March 29, 2021 | Examiner: Xue H LIU |
| Title:  MULTIPLE IMAGE PROJECTION METHOD FOR ADDITIVE MANUFACTURING | |

Mail Stop Amendment
Commissioner for Patents
*via EFS*

## AMENDMENT AFTER NON-FINAL OFFICE ACTION

This paper is a response to the Non-Final Office Action mailed September 2, 2021 ("the Office Action") for the present patent application.  The first page of the various sections of this response can be found on the following pages.

**Amendments to the Claims** ……..…………………………....…………….  2

**Remarks** …………………………………………………………………..  5

Attorney Docket: INTRP003C2

## AMENDMENTS TO THE CLAIMS

The following listing of claims will replace all prior versions, and listings, of claims in the application.

**Listing of Claims:**

1. (Original) A method comprising:

    a.   providing an additive manufacturing system, comprising:

    an image projection system comprising a plurality of image projectors; and

    an image display subsystem;

    b.   projecting a composite image onto a build area within a resin pool using the image projection system, wherein:

    the image projection system is controlled by the image display subsystem;

    the composite image comprises a plurality of sub-images arranged in an array;

    two or more adjacent sub-images in the array overlap at two or more sub-image edges; and

    each sub-image is projected onto a portion of the build area using one of the plurality of image projectors; and

    c.   adjusting properties and aligning a position of each sub-image in the array using a set of filters comprising:

    an irradiance mask that normalizes irradiance;

    a gamma adjustment mask that adjusts sub-image energy based on a reactivity of the resin;

    a warp correction filter that provides geometric correction; and

    an edge blending bar at one or more sub-image edges.

2. (Original) The method of claim 1, wherein the display subsystem controls the image projection system and each of the image projectors using digital light processing.

3.  (Original) The method of claim 1, wherein the irradiance mask additionally adjusts the energy across the build area to compensate for non-uniformities in optics of the plurality of image projectors.

4.  (Original) The method of claim 1, wherein the gamma adjustment mask comprises a logarithmic relationship between a cure depth of the resin and energy per unit area in the build area.

5.  (Original) The method of claim 1, wherein the resin is selected from the group consisting of acrylates, epoxies, methacrylates, urethanes, silicone, vinyls, and combinations thereof.

6.  (Original) The method of claim 1, wherein the edge blending bar comprises a blending distance and a function selected from the group consisting of: linear, sigmoid and geometric.

7.  (Original) The method of claim 1, wherein the edge blending bar adjusts the one or more sub-images based on at least one layer boundary location within an object being manufactured.

8.  (Original) The method of claim 1, further comprising a system controller that synchronizes exposure control of the plurality of image projectors with each other.

9.  (Original) The method of claim 1, wherein the projecting the composite image further comprises moving the plurality of sub-images during an exposure of a layer of an object being manufactured.

10. (Original) The method of claim 9, wherein the movement of the sub-images is either a step-expose-step type movement or a continuous movement.

Attorney Docket: INTRP003C2

11. (Original) The method of claim 9, wherein:

the plurality of sub-images comprises a 1D array of sub-images oriented in a first direction; and

the movement of the sub-images is in a second direction perpendicular to the first direction.

12. (Original) The method of claim 9, wherein:

the plurality of sub-images comprises a 2D array of sub-images with rows oriented along a first direction and columns oriented along a second direction; and

the movement of the sub-images is in either one of the first or second directions, or both the first and second directions.

13. (Original) The method of claim 9, wherein:

the plurality of sub-images comprises an array of sub-images with one or more rows oriented along a first direction and one or more columns oriented along a second direction; and

the movement of the sub-images is in a third direction that is different from both the first and second directions.

14. (New) The method of claim 1, wherein the adjusting properties and aligning the position of each sub-image in the array further comprises applying the irradiance mask to each sub-image such that the composite image has a uniform irradiance range across the area of the composite image.

15. (New) The method of claim 1, wherein the adjusting properties and aligning the position of each sub-image in the array further comprises applying the irradiance mask to a sub-image to normalize irradiance non-uniformities within the image projection system arising from a projector-based spatial energy non-uniformity.

## REMARKS

This paper is in response to the Office Action dated September 2, 2021. Claims 14 and 15 are new. Claims 1-15 are pending in the present application.

Applicant thanks the Examiner for the courtesy of the Examiner Interview conducted by telephone on December 16, 2021 with David Jackrel and Ivan Chousal. Distinctions between the present claims 1 and 3 and the cited reference Kobayashi (US2016/121547) were discussed. No agreement was reached.

### I.    Amendments to the Claims

Claims 14 and 15 are new, support for which may be found throughout the specification as filed, for example in paragraph [0069].

No new matter has been added hereby.

### II.    Double Patenting Rejections

Claims 1-8 are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 14-21 of U.S. Patent No. 10,780,640.

Claims 9-13 are rejected under 35 U.S.C. 101 as claiming the same invention as that of claims 14 and 22-25 of prior U.S. Patent No. 10,780,640.

In response, Applicant submits herewith a terminal disclaimer over U.S. Patent No. 10,780,640. This terminal disclaimer obviates the rejections. Withdrawal of the double patenting rejections is respectfully requested.

### III.    Rejections Under 35 U.S.C. 103

Claims 1-4 and 6-8 are rejected under 35 U.S.C. 103 as being unpatentable over Ueda et al. (2016/0368221, hereinafter "Ueda") in view of Hull et al. (2008/0169586, hereinafter "Hull"), Kobayashi (2016/0121547, hereinafter "Kobayashi"), Saruhashi et al. (2015/0202805, hereinafter "Saruhashi") and Ueno (US 7,318,718, hereinafter "Ueno").

5

Claim 5 is rejected under 35 U.S.C. 103 as being unpatentable over Ueda et al. in view of Saruhashi et al., Kobayashi, Ueno, and Hull et al. as applied to claim 1 above, and further in view of Du Toit (WO2016/179661).

**Claim 1** recites "adjusting properties and aligning a position of each sub-image in the array using a set of filters comprising: an irradiance mask that normalizes irradiance." The Office Action on p. 5 states that "Ueda et al. does not teach adjusting properties and aligning a position of each sub-image in the array using a stack of filters comprising: an irradiance mask that normalizes irradiance." The Office Action on pp. 5-6 states that "Kobayashi teaches adjusting the energy of light from the projector 31 to prevent the photo-curable resin 23 from curing excessively for the blocks 84A, 84B and 84C that are irradiated with light for a larger number of times (para 10, 12, 60, 65, 77, fig. 6-12). It would have been obvious to a person of ordinary skill in the art (POSITA) before the effective filing date of the claimed invention to modify Ueda et al. with the teaching of Kobayashi in order to prevent the phot-curable (sic) resin from curing excessively."

Applicant asserts that the method of adjusting the energy in Kobayashi is fundamentally different from that recited in the present claim 1. **Specifically, the excessive curing problem and solution described in Kobayashi is fundamentally different from the problem that is addressed by the solution of an irradiance mask recited in the present claim 1, and therefore it would not be obvious to modify Ueda with the teachings of Kobayashi to arrive at the recited claim 1.** Kobayashi is related to reducing illumination energy based on counting the total number of times an area is illuminated throughout an entire print process. For example, Kobayashi describes in paragraph [0010] that "[i]t was also discovered that in cases where **the same area of the vat is irradiated with light for a large number of times in a single printing process**, the photo-curable resin cures sufficiently even if the energy of light to be output is weakened if the number of times of irradiation exceeds a certain number." In contrast, the present specification in paragraph [0069] describes that "an irradiance masking filter… applies a normalizing irradiance mask to an image (or each sub-image in a composite image) such that the image (or composite image) has **a uniform irradiance range** (i.e., from zero exposure to a maximum exposure limit) across the area." The energy adjustments in Kobayashi do exactly the opposite, and intentionally adjust the illumination energy to be non-uniform to compensate for

areas that are irradiated with light for a large number of times in a single printing process. In other words, Kobayashi is concerned with the total exposure over time (i.e., energy applied to an area over the total number of illuminations) whereas the irradiance mask in the present specification and claims is concerned with the spatial uniformity during an exposure of a layer.

A comparison between the example shown in Kobayashi FIG. 8 and Example 1 in paragraphs [0114]-[0115] in present specification further explains the differences between the teachings of Kobayashi and those described in the present specification. Kobayashi paragraphs [0060]-[0063] and FIG. 8 describe that pixels 84A, 84B and 84C are irradiated a larger number of times than pixels 84D and 84E. In response, Kobayashi describes that the energy of pixels 84A, 84B and 84C "are irradiated with light having the first energy until the predetermined threshold value is reached, and with light having the second energy after the predetermined threshold value is reached." (Kobayashi [0063]) Pixels 84D and 84E, on the other hand, are "irradiated only with light having the first energy." (Kobayashi [0063]) Therefore, after the predetermined threshold is reached, Kobayashi intentionally irradiates pixels 84A-84E non-uniformly. In contrast, paragraph [0115] of the present specification describes a situation where an image projector outputs non-uniform light, and the irradiance mask is used to "create a uniform irradiance across the whole image." In this example, some pixels are 5% less bright than elsewhere in the image, and the irradiance mask is used to "brings the 100% bright pixels elsewhere in the image down to 95% in order to create a uniform irradiance across the whole image." (present specification, [0115]) **These examples further illustrate how the teachings of Kobayashi are fundamentally different than those in the present specification, and it would not be obvious to a POSITA to modify Ueda with the teachings of Kobayashi to arrive at the recited claim 1.**

Additionally, Applicant asserts that the term "normalize" is well-known to a POSITA, and that the methods described in Kobayashi would not be interpreted as "normalizing" by a POSITA. Furthermore, the scope of a claim is **not** determined solely on the basis of the claim language, but rather claims are given their broadest reasonable construction **in light of the specification.** In this case, Applicant asserts that the specification provides support such that the meaning of an "irradiance mask that normalizes irradiance," as recited in claim 1, is clear to a POSITA in light of the specification. For example, MPEP Section 2111 states:

> During patent examination, the pending claims must be "given their broadest reasonable interpretation **consistent with the specification**." The Federal Circuit's en banc decision

Attorney Docket: INTRP003C2

in Phillips v. AWH Corp., 415 F.3d 1303, 1316, 75 USPQ2d 1321, 1329 (Fed. Cir. 2005) expressly recognized that the USPTO employs the "broadest reasonable interpretation" standard:

> The Patent and Trademark Office ("PTO") determines the scope of claims in patent applications **not solely on the basis of the claim language**, but upon giving claims their broadest reasonable construction "**in light of the specification as it would be interpreted by one of ordinary skill in the art**." In re Am. Acad. of Sci. Tech. Ctr., 367 F.3d 1359, 1364[, 70 USPQ2d 1827, 1830] (Fed. Cir. 2004). Indeed, the rules of the PTO require that application claims must "conform to the invention as set forth in the remainder of the specification and the terms and phrases used in the claims must find clear support or antecedent basis in the description so that **the meaning of the terms in the claims may be ascertainable by reference to the description**." 37 CFR 1.75(d)(1).

**Claim 3** recites "wherein the irradiance mask additionally adjusts the energy across the build area to compensate for non-uniformities in optics of the plurality of image projectors." The Office Action states on pg. 6, "Kobayashi teaches wherein the irradiance mask additionally adjusts the energy across the build area to compensate for non-uniformities in optics of the plurality of image projectors (para 10, 12, 60, 65, 77, fig. 6-12)." Applicant respectfully disagrees. As described above, Kobayashi intentionally adjusts the illumination energy to be non-uniform to compensate for areas that are irradiated with light a large number of times throughout a printing process. Kobayashi does not teach adjusting energy across the build area to "compensate for non-uniformities in optics of [a] plurality of image projectors." For these reasons (and those described above), it would also not be obvious to modify Ueda with the teachings of Kobayashi to arrive at the recited claim 3.

**Claims 14 and 15** are new and include further limitations on the irradiance mask. Claim 14 recites that the irradiance mask is applied "to each sub-image such that the composite image has a uniform irradiance range across the area of the composite image." Claim 15 recites that the irradiance mask is applied "to a sub-image to normalize the irradiance non-uniformities within the image projection system arising from a projector-based spatial energy non-uniformity."

In light of the present remarks, Applicant respectfully requests that the rejections of claim 1 and the claims dependent on claim 1, under 35 U.S.C. 103 be withdrawn.

Attorney Docket: INTRP003C2

IV.    <u>**Conclusion**</u>

Applicant believes all claims now pending in this application are in condition for allowance.  The expedient issuance of a formal Notice of Allowance is respectfully requested.  If any issues remain, the Examiner is asked to telephone the undersigned, thereby simplifying and expediting the examination and prosecution process.

Respectfully submitted,

MLO

/David Jackrel/

David Jackrel
Reg. No. 76731

MLO
12707 High Bluff Drive, Suite 200
San Diego, CA  92130
Tel: (858) 481-1883
Fax: (858) 408-3570
E-mail:  david@mlo-ip.com



UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **17/301,204** | **12/20/2021 05:55:05 PM ET** | **INTRP003C2** |

## Title of Invention

MULTIPLE IMAGE PROJECTION METHOD FOR ADDITIVE MANUFACTURING

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 6763 | FILED BY | Laura Stanton |
| PATENT CENTER # | 60453100 | FILING DATE | 03/29/2021 |
| CUSTOMER # | 67362 | FIRST NAMED INVENTOR | Ben Wynne |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | David Jackrel |

## Documents

# TOTAL DOCUMENTS: 3

| DOCUMENT | PAGES | | DESCRIPTION | SIZE (KB) |
|---|---|---|---|---|
| 20211220_INTRP003C2_non-final_response_amend.pdf | | 9 | - | 191 KB |
| 20211220_INTRP003C2_non-final_response_amend-A....pdf | (1-1) | 1 | Amendment/Req. Reconsideration-After Non-Final Reject | 95 KB |
| 20211220_INTRP003C2_non-final_response_amend-CLM.pdf | (2-4) | 3 | Claims | 103 KB |
| 20211220_INTRP003C2_non-final_response_amend-REM.pdf | (5-9) | 5 | Applicant Arguments/Remarks Made in an Amendment | 159 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| 20211220_INTRP003C2_non-final_response_amend.pdf | DD6DD8C29C440035749B0BC3C4000CC05757E2FDB50E66E6 A7C6749DF94AF002229A4663882A95E3F876D0D5E4E079B1D8 F76A37D0D5EA8C80515220136CA304 |
| 20211220_INTRP003C2_non-final_response_amend-A....pdf | 951B55C4B547B374ABD8550FFA9DEAEEBCE60594414679D5F 2577E2CE52182D2F7C7BF17D120B50A9724CD4DB7110EEC21 C255BED342699C1A7E8D89314107F0 |
| 20211220_INTRP003C2_non-final_response_amend-CLM.pdf | 5CC32710AF717EDFE45D103A1678C293D119473DA8CF669BD 47B9A4F5B127D955C8E7E618B17F66E374C200D149708E42F3 A72896BE8F46777A4CE8380B571BB |
| 20211220_INTRP003C2_non-final_response_amend-REM.pdf | B889B132B02F7EB27E53F0DA652286B71C1BF0146409B3D6C B8CBE4292EE99CA34A993D1EBFDA5CD7A17FD0AF6C46D7A 98D8BA59B08CC45077087F0E29BE0C46 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.