UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTREPID AUTOMATION, INC.,<br><br>                      Plaintiff,<br><br>v.<br><br>3D SYSTEMS, INC., et al.,<br><br>                      Defendants. | Case No.: 24-cv-2262-AGS-DDL<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS (ECF 26)** |

This patent action opens another front in the years-long legal battle between two 3D-printing competitors—plaintiff Intrepid Automation, Inc., and defendant 3D Systems, Inc. Intrepid alleges that 3D Systems is infringing Intrepid's Patent '301 and Patent '511.[1] 3D Systems moves to dismiss the complaint.

## DISCUSSION

To survive 3D Systems' motion to dismiss, Intrepid's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Plausibility requires more than mere "conclusions" or a "formulaic recitation" of elements; it must be based on "factual allegations" that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Even though the devices in patent cases can be complicated, the "pleading obligations are not onerous." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021). To "place the alleged infringer on notice of what activity is being accused of infringement," *id.* at 1352, "an adequate complaint need only contain some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim," *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024) (quotation marks omitted).

---

[1] "Patent '301" refers to U.S. Patent 11,014,301, and "Patent '511" refers to U.S. Patent 11,338,511.

1

According to 3D Systems, Intrepid's complaint is deficient for each category of infringement—direct, willful, induced, and contributory.

## A.     Direct Infringement

Direct infringement comes in two flavors: (1) literal infringement—that is, when a "product" "literally infringe[s] upon the express terms of a patent claim," and (2) infringement under the doctrine of equivalents, which is when "there is equivalence between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). Under the doctrine of equivalents, the "scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claims described." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 732 (2002). Under either theory, 3D Systems contends that Intrepid's complaint fails.

As to literal infringement, 3D Systems makes three arguments. Perhaps its strongest point is that "the relevant 3D printing technology involves complex processing and software and therefore requires a level of detail that is missing from the Complaint." (ECF 26, at 20.) It's true that "the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device" can heighten "[t]he level of detail required" at the pleading stage. *Bot M8*, 4 F.4th at 1353. But, even for such cutting-edge devices, Intrepid's complaint meets that standard. The complaint places 3D Systems on notice of which products infringe the '301 and '511 Patents: the PSLA 270 and additional products that are "under development," including a PSLA-270-related "large-format [digital-light-processing] printer" and another "Bioprinter." (ECF 1, at 19–20, 27–30.) The complaint also describes the allegedly infringing technology within each product: the "image projection system with multiple projectors which project sub-images arranged in an array with overlapping sub-images to form a composite image"; "a display subsystem controlling the image projection system and each of the projectors"; and "digital filters [that] adjust sub-image properties and alignment, including an irradiance mask, gamma adjustment mask, warp correction filter,

and a blending bar." (*Id.* at 21; *see also id.* at 5–6.) As for the PSLA 270, the complaint even details that there are "two projectors projecting two side-by-side sub-images downward." (*Id.* at 14.) These allegations allow 3D Systems to "know what [Intrepid's] patents claim" and "what [Intrepid] asserts [the accused] systems do." *See K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1287 (Fed. Cir. 2013). So 3D Systems is "on notice of" the "complex[]" "activity [that] is being accused of infringement." *See Bot M8*, 4 F.4th at 1353.

In a related argument, 3D Systems maintains that there is no "fair notice" because the "complaint lacks factual support that the accused products meet each and every element of claim 1 of the asserted patents." (ECF 26, at 17 (cleaned up).) "If even one" "is missing," it insists, "there cannot be a finding of literal infringement." (*Id.* at 18.) Not so. "A plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8*, 4 F.4th at 1352. At any rate, Intrepid offered fair notice of its literal-infringement claim by attaching the '301 and '511 Patents as well as the patent application for 3D Systems' allegedly infringing Bioprinter (ECF 1-2; ECF 1-3; ECF 1-11); describing 3D Systems' purportedly infringing products in detail, including photographs of its PSLA 270 3D printer and a diagram of its internal architecture (ECF 1, at 13–21; ECF 1-6); and claiming that "the PSLA 270 infringes each limitation of each Asserted Patent," as do 3D Systems' Bioprinter and its "large-format version of the PSLA 270" (ECF 1, at 19–21). *See, e.g.*, *Disc Disease Sols. Inc. v. VGH Sols., Inc*., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (upholding patent-infringement complaint that attached the "asserted patents"; identified the accused products "by name and by attaching photos of the product packaging"; and alleged that "the accused products meet 'each and every element of at least one claim [of plaintiffs' patents], either literally or equivalently'").

Finally, 3D Systems asserts that Intrepid's claims about the "in development" products are too "vague." (*See* ECF 26, at 21.) But, according to the complaint, a 3D Systems representative said that the PSLA 270 is only "the first of what will be a family of new projector-over-VAT printing systems." (ECF 1, at 19.) And, if the PSLA 270

3

infringes, it's reasonable to infer that the "family" of related products "under development" will as well—especially if, as alleged, that technological progeny "works the same way as the PSLA 270" with an expected "four or more image projectors pointing downward to a larger build platform located in or on a vat of resin." (*See id.* at 19–20.) Those allegations might ultimately be wrong, but they are far from vague. At any rate, the missing details about the PSLA 270 and other allegedly under-development products are "not ascertainable without discovery," and thus "should not bar [Intrepid's] filing of a complaint." *See K-Tech*, 714 F.3d at 1286. So Intrepid's literal-infringement claims survive.

Turning to Intrepid's doctrine-of-equivalents allegations, 3D Systems insists that they are too "conclusory" to state a claim. (ECF 26, at 24.) But once a complaint adequately states literal-infringement claims, "a general allegation of patent infringement under the doctrine of equivalents is sufficient to place Defendants on notice" of its intent to rely on that theory. *See Brice Env't Servs. Corp. v. Arcadis U.S., Inc.*, No. 3:21-CV-00141-JMK, 2022 WL 1032930, at *8 (D. Alaska Apr. 6, 2022); *see also id.* at *8 n.101 (collecting cases). After all, plaintiffs may plead direct infringement "alternatively or hypothetically" to allow for the possibility that the post-discovery proof reveals that an accused product does not literally infringe but is still close enough to infringe as an equivalent. *See* Fed. R. Civ. P. 8(d)(2). With such alternative causes of action, "the pleading is sufficient if any one of them is sufficient." *Id*. Because Intrepid already stated a claim for literal infringement, it met its alternative-pleading obligations by claiming that 3D Systems "has infringed one or more claims of" both patents "under the doctrine of equivalents." (*See* ECF 1, at 27, 29); *see also Brice*, 2022 WL 1032930, at *8.

As both direct-infringement theories are adequately pleaded, the motion to dismiss them is denied. Also, 3D Systems' subsidiary arguments that the other infringement claims lack a direct-infringement predicate are rejected.

**B.     Willful Infringement**

3D Systems next contends that Intrepid's willful-infringement claim "fails because it is based on . . . speculatory allegations that have nothing to do with an intent to infringe"

4

upon Intrepid's patents. (ECF 26, at 25.) The complaint's allegations suggest otherwise.

Once "[k]nowledge of the asserted patent and evidence of infringement" are established, *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021), "the concept of 'willfulness' requires . . . no more than deliberate or intentional infringement," *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020). Intrepid alleges that 3D Systems knew of the patents by nature of "review[ing] each of the patent publications that matured as the Asserted Patents within days of their publication" and then "used the Asserted Patents as a roadmap to develop" its allegedly infringing products. (ECF 1, at 22, 25.) These facts alone likely qualify as "deliberate or intentional infringement" behavior. *See Eko Brands*, 946 F.3d at 1378; *see also BSD Crown, LTD. v. Amazon.com, Inc.*, 684 F. Supp. 3d 993, 1002, 1004 (N.D. Cal. 2023) (ruling that "willful infringement" was "plausibly allege[d]" when, "despite knowledge" of the patent, defendant "continued to use the allegedly infringing technology"); *cf. Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*, 564 F. Supp. 3d 1126, 1148 (D. Utah 2021) (explaining that willful-infringement allegations would fail against "defendants who, in good faith, attempted to design around patents they knew about").

And Intrepid's allegations regarding willfulness go much further, plausibly suggesting that 3D Systems conducted corporate espionage in aid of patent infringement. That is, while ostensibly interviewing for a position at Intrepid, a 3D Systems employee allegedly "toured Intrepid's facilities and was shown Intrepid's highly confidential unreleased products, test beds, samples, and technologies," including those Intrepid claims "in its patents." (ECF 1, at 22–23.) That employee purportedly "knew" that these innovations "would be much faster than anything 3DS had in the marketplace or even under development at that time." (*Id.* at 23.) And he "continued to request detailed information from Intrepid regarding the" technologies. (*Id.*) What's more, the 3D Systems employee allegedly violated the non-disclosure agreement he signed with Intrepid when he later "informed one or more 3DS employees that they should take a careful look at Intrepid's

patents and public patent applications." (*Id.*) 3D Systems' "Director of Material Sales" did so, and he "ascertained that [the] information regarding Intrepid's . . . technology" would be "a dire threat to 3D Systems' business." (*Id.* at 24.) That director then "requested immediate analysis" of "how Intrepid's new technology stacked up to existing 3DS equipment . . . to combat the impending threat that this new technology posed." (*Id.*) In addition, after the fateful tour of Intrepid's facilities—but before the claimed infringement—3D Systems workers had several other internal discussions about the patented technology at issue here, according to the complaint. (*See id.*)

These factual details easily meet the standard for plausibly alleging willfulness. The motion to dismiss the willful-infringement claim is denied.

## C.     Induced Infringement

As to induced infringement, 3D Systems focuses primarily on the intent requirement. To pass muster, an allegation of induced infringement must plausibly show, among other things, that "the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement." *AlexSam*, 119 F.4th at 46 (cleaned up). 3D Systems maintains that the complaint contains only "[c]onclusory allegations" and "no factual basis to infer specific intent to induce." (ECF 26, at 29.) But "[c]ircumstantial evidence may suffice to prove specific intent," *AlexSam*, 119 F.4th at 46, and the complaint sets forth a plausible indirect case for such intent. As discussed above, Intrepid has adequately alleged 3D Systems' knowledge of the subject patents. And, according to the complaint, 3D Systems "announced via press release" that a customer "intends to add . . . two PSLA 270" 3D printers "to its manufacturing workflow." (ECF 1, at 19.) It is plausible that 3D Systems specifically intended to induce infringement by this client based on "instructional materials" that 3D Systems provided its customers (*id*. at 28, 30) as well as 3D Systems' website video, "Get to know the PSLA 270," which "introduces" the allegedly infringing device alongside "a web button" allowing "users to 'Get a Quote'" (*id*. at 14, 18). Indeed, the case for specific intent here is at least as strong as the facts the *AlexSam* court blessed. *See AlexSam*, 119 F.4th at 46 (approving induced-

infringement pleadings of specific intent because they plausibly alleged, among other things, that defendant induced "infringement by its customers by continuing to sell, support, and instruct its customers on using the" accused products "in an infringing manner, at least through information available on Defendant's website including information brochures, promotional material, and contact information").

3D Systems' arguments thus fall short, and the motion to dismiss the induced-infringement claim is denied.

### D. Contributory Infringement

We turn, finally, to contributory infringement, which is a theory of liability for the seller of a part or "component of a patented machine" when that component has little use except in its role within the patented device. *See* 35 U.S.C. § 271(c). To state a claim for contributory infringement, plaintiffs must plausibly allege that: (1) "someone other than [the] alleged [contributory] infringer . . . directly infringe[d] a claim of the patent"; (2) the alleged contributory infringer "supplied an important component of the infringing part of the product or method"; (3) the "component is not a common component suitable for non-infringing use"; and (4) the alleged contributory infringer "supplied the component with the knowledge of the patent and knowledge that the component was especially made or adapted for use in an infringing manner." N.D. Cal. Model Patent Jury Instruction 3.6 (brackets omitted).

3D Systems advances three main arguments. First, it protests that the complaint offers only conclusory allegations of the "non-staple nature" of 3D Systems' components. (ECF 26, at 27–28.) For this element, however, at least one district court has found that a general allegation that the accused products "have no substantial non-infringing uses" suffices. *See Venkee Commc'ns, LLC v. Belkin Int'l, Inc.*, No. 2:20-cv-02021-CBM-PVCx, 2020 WL 5413039, at *3 (C.D. Cal. Aug. 5, 2020). Other district courts disagree, rejecting general allegations in this context as "conclusory," "threadbare recitals" that contravene the plausibility pleading requirements. *See Iron Oak Techs., LLC v. Dell, Inc.*, No. 1:17-CV-999-RP, 2018 WL 1631396, at * 2 (W.D. Tex. Apr. 4, 2018) (citing *Iqbal*, 556 U.S.

at 678). But there's good reason to allow a general allegation in this particular instance—a contrary position would essentially require plaintiffs to prove a negative without the benefit of discovery. And that strikes the Court as an "onerous" requirement that would improperly require patentees to "prove their case at the pleading stage." *See Bot M8*, 4 F.4th at 1346, 1354.

Of course, such general allegations may be inadequate if the complaint otherwise "demonstrate[s] that the [accused] products *do* have substantial non-infringing uses," but that exception is not implicated here. *See In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012). Intrepid pleads that the 3D Systems products at issue—the "Accused Instrumentalities"—"were not staple articles of commerce suitable for substantial non-infringing uses." (ECF 1, at 28, 30.) Nothing in the complaint contradicts that assertion.

3D Systems' next line of attack centers on the complaint's failure to allege, beyond conclusory statements, that 3D Systems "knew that any products lacked non-infringing uses." (ECF 26, at 27.) But the "same allegations that adequately plead knowledge of the patent and knowledge of the patent infringement for purposes of induced infringement" can "suffice for purposes of [a] contributory infringement claim." *See AlexSam*, 119 F.4th at 47. As discussed earlier, Intrepid's complaint alleges at least as strong a case for 3D Systems' knowledge as the one that sufficed in *AlexSam*.

Finally, 3D Systems faults the complaint for failing to "identify any specific component that allegedly contributorily infringed the Asserted Patents." (ECF 26, at 27.) Yet in describing the makeup of 3D Systems' "Bioprinter," the complaint lists several such material components, including an "image projection system with multiple projectors which project sub-images arranged in an array with overlapping sub-images to form a composite image"; a "display subsystem controlling the image projection system and each of the projectors"; and "digital filters [that] adjust sub-image properties and alignment, including an irradiance mask, gamma adjustment mask, warp correction filter, and a blending bar." (ECF 1, at 21; *see also id.* at 7–8.) These components are precisely what

8

24-cv-2262-AGS-DDL

Intrepid claims in its patents. (*See* ECF 1-2, at 31, 43; ECF 1-3, at 31, 43.) The same is true of the PSLA 270 and its family of devices. (*See* ECF 1, at 21 (describing "a display subsystem controlling the image projection system and each of the projectors" and "digital filters [that] adjust sub-image properties and alignment, including an irradiance mask, gamma adjustment mask, warp correction filter, and a blending bar").)

The Court denies the motion to dismiss the contributory-infringement claim.

## CONCLUSION

3D Systems' dismissal motion is **DENIED**. 3D Systems' judicial-notice motion (ECF 26-1) is denied as moot, as it involved material unnecessary for the Court's decision.

Dated:  July 15, 2025

_____
Hon. Andrew G. Schopler
United States District Judge